UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:

AARON E. BOORSTEIN                             CASE NO.: 14-30088-RBR
                                               Chapter 7
    Debtor(s)
_____/

KENNETH A. WELT, as chapter 7 trustee for      Adv. Pro. No. _____
Aaron Boorstein, and DANIEL KAPLAN,

    Plaintiffs,

v.

AARON BOORSTEIN,

    Defendant.
_____/

# EMERGENCY EX PARTE APPLICATION FOR
# THE ENTRY OF A TEMPORARY RESTRAINING
# ORDER AND TO SCHEDULE A PRELIMINARY INJUNCTION HEARING

**Emergency Ex-Parte relief is sought as the Debtor has dissipated and disbursed assets of the subject business and received distributions of assets belonging to the estate. The Trustee and Dr. Kaplan believe that upon notice and service of this adversary proceeding, the Debtor will continue to further deplete assets of the Practice prior to the entry of an injunction or other remedy by this Court. Accordingly, the Trustee and Dr. Kaplan believe a TRO without notice is warranted to maintain the status quo and avoid dissipation of assets. In the event that no such dissipation would occur, then there is no harm to the relief, as the TRO merely secures the assets of the Practice pending final hearing.**

Kenneth A. Welt, the Chapter 7 Trustee (the *"Trustee"*) for the bankruptcy estate of Aaron Boorstein and Daniel Kaplan (*"Dr. Kaplan"*), move for the entry of a temporary restraining order (*"TRO"*) against Aaron Boorstein (the *"Debtor"*) and to schedule a preliminary injunction hearing, and state as follows:

## BACKGROUND

This is an adversary proceeding to determine that the Debtor, a physician and owner of a prepetition interest in a medical practice, is no longer entitled to receive distributions and manage the practice, as his interest now belongs to the estate. Since filing the petition, the Debtor has continued to operate the practice for his own benefit, including the payment of his personal expenses, to the detriment of the estate and the practice.

## MATERIAL FACTUAL ALLEGATIONS

1. Medical Affiliates, P.L. (the *"Practice"*) was organized under the laws of the State of Florida on July 13, 2011, as a for-profit professional limited liability company. The Practice was owned by its two equal members, Dr. Kaplan and the Debtor, each of whom owned 50% of the Practice. Dr. Kaplan and the Debtor were the managing members of the Practice. The Debtor scheduled a "50% ownership" interest in the Practice (the *"Debtor's Membership Interest"*).

2. The Debtor did not claim the Debtor's Membership Interest as exempt. As such, the Debtor's Membership Interest became property of the bankruptcy estate, and is owned by Kenneth A. Welt, as trustee for the Debtor's bankruptcy estate. Thus, the Debtor's economic interests or distributions from the Practice are property of the bankruptcy estate, including the capital account of the Debtor.

3. After the petition, the Trustee filed a motion pursuant to Rule 2004 and entered into an agreement memorialized by an agreed order for the inspection and evaluation of the Practice. [Main Case, ECF No. 49].

4. While the Debtor initially agreed and cooperated, and the Trustee obtained certain information, the Debtor subsequently failed to provide bank account information, accounting

information, and information to verify the revenues and expenses of the Practice -indicating that he instead wished to dismiss the bankruptcy case.

5. Since the Petition Date, the Debtor has continued to pay personal expenses out of company assets, including personal payments for personal gasoline, insurance, air conditioning repair, hotels, flowers, and purchases at Best Buy. In October 2014, the Debtor caused a distribution to be made to himself, as a member, in the amount of $6,000.00, despite that any distributions owed are owed to the Trustee, not the Debtor.

6. In fact, despite having made the $6,000 distribution (with an accompanying $6,000.00 to the other member, Dr. Kaplan), upon information and belief the Debtor caused tax returns to be filed which reflect distributions of only $3,609.00. Such tax returns were created and filed without the knowledge or consent of the Trustee or Dr. Kaplan.

7. On March 11, 2015, without any knowledge or consent, Dr. Kaplan received a K-1, indicating 2014 distributions of $3,609.00, despite Dr. Kaplan (and presumably Debtor's) knowledge that such amounts are not correct. A copy of Dr. Kaplan's K-1 is attached as **Exhibit B**.

8. The Trustee believes it is likely that Debtor caused an equally incorrect K-1 to be generated for himself.

9. Moreover, on February 27, 2015, the Debtor caused the Practice to open a new account (the *"0367 Account"*) at Bank of America in the Practice's name, without informing the Trustee or Dr. Kaplan.

10. While no access was provided to the Trustee or Dr. Kaplan for the 0367 Account, (perhaps) because the account was held in the same name as the Practice's existing Bank of

America Account (the *"Existing Account"*), Dr. Kaplan discovered that he had view-only access on his iPad to the 0367 Account, despite never having been informed as to its existence.

11. On March 9, 2015, based on Dr. Kaplan's review of the 0367 account, Dr. Kaplan discovered that on March 9, 2015, $10,000.00 was transferred from the Existing Account to the 0367 Account (the *"10k Transfer"*). Screenshots of the Existing Account and 0367 Account evidencing the 10K Transfer are attached as **Composite Exhibit C**

12. The Trustee and Dr. Kaplan believe the Debtor made the 10k Transfer to hide or exercise control over Practice Assets from the Estate and Dr. Kaplan.

13. On March 5, 2015, Dr. Kaplan called a Special Meeting of the Members of Medical Affiliates, P.L. for March 16, 2015. At the meeting, the *Resolution of the Members* (which is attached as **Exhibit A**), passed without opposition (the *"Resolution"*).

14. The Resolution *inter alia* authorized the appointment of Dr. Kaplan as the sole manager of the Practice for the time being. Following the Resolution, Dr. Kaplan, on behalf of the practice, decided to terminate the employment of the Debtor, effective immediately, and the Debtor was terminated (or will be terminated) on March 16, 2015.

15. Medical Affiliates, P.L. through Dr. Kaplan is on notice, and consents and agrees to the requested relief and TRO.

16. On March 16, 2015, the Trustee and Dr. Kaplan filed this adversary proceeding via a verified complaint seeking (1) a determination that the Debtor's Membership Interest is property of the estate; (2) turnover of the Debtor's Membership Interest and any post-petition distribution made on account of the Debtor's Membership Interest; and (3) an injunction against transferring or depleting assets of the Practice and seeking to remove any access that the Debtor may have to the Practice or its assets (the *"Complaint"*) [ECF No. 1].

17. The Trustee and Dr. Kaplan believe that upon notice and service of this adversary proceeding, the Debtor will continue to further deplete assets of the Practice prior to the entry of an injunction or other remedy by this Court. Accordingly, the Trustee and Dr. Kaplan believe a TRO without notice is warranted to maintain the status quo and avoid dissipation of assets. In the event that no such dissipation would occur, then there is no harm to the relief sought, as the TRO merely secures the assets of the Practice.

## MEMORANDUM OF LAW

As an initial matter, "[i]t is well established that the power to issue 'any order' under Section 105(a) includes the power to enter injunctions that are necessary to carry out the provisions of the Bankruptcy Code." *In re Willis*, 411 B.R. 783, 786 (Bankr. S.D. Fla. 2009). Pursuant to Fed.R.Civ.P. 65, also made applicable to bankruptcy proceedings by Fed.R.Bankr.P. 7065, the Trustee seeks the entry of a TRO without notice to the Defendant. A TRO is appropriate without notice if "the specific facts in . . .a verified complaint show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition." Fed. R. Bankr. P. 7065 provides that a TRO may be issued to a Trustee without payment of a bond. Here the verified Complaint sets forth verified allegations sufficient for the Court to make such findings.

A TRO is needed to protect the estate. In the Eleventh Circuit, a TRO movant must demonstrate (1) a substantial likelihood of success on the merits, (2) a substantial threat of irreparable harm to the movant absent the injunction, (3) that the threatened harm to the movant outweighs any harm defendant(s) might suffer, and (4) the public interest will not be adversely affected. *Laube v. Haley*, 234 F.Supp. 2d 1227, 1230 (M.D. Ala. 2002), citing *Frio Ice, S.A. v. Sunfruit. Inc.*, 918 F.2d 154, 159 (11th Cir. 1990). *Accord, McDonald's Com. v. Robertson*, 147

F.3d 1301, 1306, (11th Cir. 1998); *Henkel v. Lickman (In re Lickman)*, 286 B.R. 821, 828-29 (Bankr. M.D. Fla. 2002).

    A.  <u>The Trustee is Highly Likely to Succeed On The Merits</u>

"A substantial likelihood of success on the merits requires a showing of only likely or probable, rather than certain, success." *See Schiavo ex rel. Schindler v. Schiavo*, 403. F.3d 1223, 1232 (11th Cir. 2005). As alleged in the Complaint and set forth herein, the Debtor's Membership Interest is clearly property of the estate. The estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). There can be little doubt that the interest in a limited liability company is a legal or equitable interest, and there is equally no possible dispute that the Debtor owned such interest prepetition. Thus, it is indisputable that the Debtor's membership interest is property of the estate, and success on Count I of the Complaint is highly likely.[1]

It follows that any property of the Estate is required to be turned over to the Trustee. 11 U.S.C. § 542 clearly provides that anyone with custody or control of property of the estate "shall deliver to the trustee, and account for, such property or the value of such property." The Debtor has undeniably failed to do so by exercising economic benefits of the Debtor's Membership Interest and failing to account for such property or the value of such property. Accordingly success on Count II is highly likely.

Finally, 11 U.S.C. § 362(a)(3) prohibits any "act . . . to exercise control over property of the estate." Obviously, dissipating the assets of the Practice, an estate asset, is an act to control property of the estate. Accordingly it follows that success on Count III is highly likely.

---

[1] Florida law may limit the rights of the estate as to that property interest. That is, the trustee may only have economic rights. *Olmstead et al. v. Federal Trade Commission*, 44 So. 3d 76 (Fla. 2010). But no matter what limitations may constrain the estate, the Debtor certainly does not continue to own the economic benefits of the Membership Interest including the right to distributions and capital account.

Simply put, the Debtor does not have and could not have any defense to the relief sought in the Complaint. By filing a voluntary bankruptcy, he relinquished any property right as to the Debtor's Membership Interest. Thus, the Trustee may properly administer the asset without his interference, and the Trustee is entitled to all the relief requested in the Complaint.

B. <u>Irreparable Harm and the Balance of Hardships</u>

An injunction is necessary in order to prevent the Debtor from continuing to dissipate, secret or transfer the assets of the Practice to the detriment of the Debtor's creditors, the Practice, Dr. Kaplan, and this bankruptcy estate. If the Debtor depletes assets (by paying bills or otherwise using the Practice's cash) there will be little practical way for the Trustee to recover such amounts. It follows that such harm is *irreparable.* Unless the Court issues an injunction or some other form of equitable relief to stop Debtor from dissipating or secreting the assets of the Practice, Dr. Kaplan and the Trustee (on behalf of the Debtor's estate and his creditors) will suffer irreparable harm and will have no adequate remedy at law to recover the assets of Practice for the benefit of the Estate.

It is the threat of harm which cannot be undone which authorizes the exercise of this equitable power before the merits are fully determined." *Lickman*, 286 B.R. at 829. If the Debtor dissipates assets of the Practice before the conclusion of this adversary proceeding, the loss to the estate will be difficult to replace or measure. *See WPIX, Inc. v. Ivi, Inc.*, 691 F.3d 275, 285 (2d Cir. 2012) ("[h]arm may be irreparable where the loss is difficult to replace or measure, or where plaintiffs should not be expected to suffer the loss"). *See also Micro Signal Research, Inc. v. Otus*, 417 F. 3d 28, 30 (5th Cir. 2005) ("the possibility that a defendant may not have assets on the day of judgment may not automatically make out a showing of irreparable injury, but the

story is quite different when there is a strong indication that the defendant may dissipate or conceal assets"); *Elliot v. Kiesewetter*, 98 F. 3d 47, 58 (3rd Cir. 1996).

Here, a TRO is particularly warranted because there is absolutely no possible harm to the Debtor. That is, the Debtor is clearly not entitled to participate in the Practice, so there could be no possibly harm in enjoining him from doing what he is already not entitled (and stayed) from doing.

C. <u>The TRO is in the Public Interest</u>

A TRO would serve the public interest because it will dissuade Debtor from fraudulently transferring and secreting the Practice's assets to avoid payment of the Debtor's creditors, while at the same time enjoying the benefits of the Practice's assets. The TRO will only serve to advance the public interests.

**WHEREFORE**, the Trustee and Dr. Kaplan respectfully request that a temporary restraining order be entered to stop Debtor from dissipating or secreting any assets of the Practice, or the proceeds thereof, to remove any access that Dr. Kaplan may have to the Practice or its assets, and to provide any further relief that this Court deems just, fair and equitable.

Respectfully submitted,

| | |
|---|---|
| **RICE PUGATCH ROBINSON & SCHILLER, P.A.** | **MELAND RUSSIN & BUDWICK, P.A.** |
| *Counsel to the Trustee* | *Attorneys for Dr. Kaplan* |
| 101 NE 3rd Ave., Suite 1800 | 3200 Southeast Financial Center |
| Fort Lauderdale, FL 33301 | 200 South Biscayne Boulevard |
| Telephone: (954) 462-8000 | Miami, Florida 33131 |
| Facsimile: (954) 462-4300 | Telephone: (305) 358-6363 |
| | Telecopy: (305) 358-1221 |
| By: /s/ Craig Pugatch | By: _____ |
|     CRAIG A. PUGATCH |     Lawrence E. Pecan, Esquire |
|     Florida Bar No. 653381 |     Florida Bar No. 990866 |
|     capugatch@rprslaw.com |     lpecan@melandrussin.com |

## Resolution of the Members of
## Medical Affiliates, P.L.

WHEREAS, Medical Affiliates, P.L. (the "Company") was organized under the laws of the State of Florida on July 13, 2011;

WHEREAS, the Company was owned by its two equal members, Daniel Kaplan and Aaron Boorstein, each of which owned 50% of the Company;

WHEREAS, Aaron Boorstein and Daniel Kaplan were the managing members of the Company;

WHEREAS, on September 6, 2014, Aaron Boorstein filed a voluntary bankruptcy petition under chapter 7 of title 11 of the United States Code;

WHEREAS, Kenneth A. Welt was appointed the trustee of Aaron Boorstein's bankruptcy estate;

WHEREAS, the Articles of Organization signed July 12, 2011 provide that "the members of this P.L. shall be physicians licensed under Chapter 458 F.S. or 459 F.S.";

WHEREAS, Kenneth A. Welt is not a physician;

WHEREAS, in spite of such limitation, the membership interest owned by Aaron Boorstein became property of the bankruptcy estate, and is owned by Kenneth A. Welt, as trustee for Aaron Boorstein's bankruptcy estate;

WHEREAS, any economic interest or distribution in the Company is property of the bankruptcy estate, including the capital account of Aaaron Boorstein.

WHEREAS, Kenneth A. Welt cannot vote, as he is not a physician;

WHEREAS, Aaron Boorstein, no longer possesses an economic interest as a member, including an interest in his capital account.

WHEREAS, it is in the best interest of the Company that it continue to operate.

{Firm Clients/5543/5543-1/01590570.DOCX.}



NOW THEREFORE, be it resolved that:

1. The Articles of Organization shall be amended, in the form attached as Exhibit 1 to
    a. Update the applicable statutory references;
    b. Remove Aaron Boorstein as a manager;
    c. Provide Daniel Kaplan is presently the sole manager;
    d. Permit Kenneth A. Welt to appoint a physician as a second manager, in his discretion;
2. Aaron Boorstein shall shall not manage the Company, and shall have no right to bind the Company.
3. The Company shall open new bank accounts and transfer all funds held in its existing accounts to the new accounts, for which Daniel Kaplan will be the sole signature authority.
4. The Company shall change all its locks and provide copies of keys to Kenneth A. Welt.
5. So long as Kenneth A. Welt as Trustee in Bankruptcy maintains an interest in the Company:
    a. All payments outside the ordinary course must be presented to Kenneth A. Welt one week prior to such payment, to which Kenneth A. Welt may object by emergency motion to the United States Bankruptcy Court for the Southern District of Florida;
    b. Kenneth A Welt shall have access to all financial records and information of the Company, subject to restrictions of HIPAA and applicable confidentiality.

    c. Kenneth A Welt shall have access to all records of the Company subject to an appropriate standard business associate agreement, subject to restrictions of HIPAA and applicable confidentiality.

    d. The Operating Agreement cannot be amended.

Dated this 16th day of March 2015.

_____
Dr. Daniel Kaplan
Member and Sole Manager

# AMENDED ARTICLES OF ORGANIZATION
# OF MEDICAL AFFILIATES, P.L.

The undersigned, being authorized to execute and file these Articles of Organization, hereby certifies that:

### ARTICLE I –Name:

The name of the limited liability company (hereinafter referred to as the "Company") is "Medical Affiliates, P.L."

### ARTICLE II –Address:

The mailing address and street address of the principal office of the Company is:
50 NE 26th Ave.
#203
Pompano Beach, FL 33062

### ARTICLE III –Registered Agent, Registered Office and Registered Agent's Signature:

The name and Florida Street address of the Company's registered agent is: Daniel Kaplan, M.D., at 4020 Galt Ocean Dr. #1408, Fort Lauderdale, FL 33308.

*Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provision of all statutes relating to the proper and complete performance of my duties and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 605 F.S.*

_____
Daniel Kaplan, M.D.

### ARTICLE IV –Limitation on Agency Authority of Members:

Pursuant to section 605.04074 of the Florida Limited Liability Company Act, no member of the Company shall be an agent of the Company solely by virtue of being a member.

### ARTICLE V –Limitation on Ownership and Purpose:

This Company is organized for the purpose of rendering medical and related services and transacting any and all lawful business permitted for such a professional service corporation under Chapters 608 and 621 of the F.S. and pursuant to Chapter 621 F.S., the members of this P.L. shall be physicians licensed under Chapter 458 F.S. or 459 F.S.

Notwithstanding any contrary provision of these Articles of Organization or any applicable Operating Agreement, in the event that, in spite of this Article V, a membership interest comes to be owned by a non-physician, by operation of title 11, United States Code, then for the purposes of voting any interest, including for determination of a quorum, unanimous written consent, or similar provision, the interest owned by such non-physician shall be ignored, and the remaining membership interests shall have such rights as if they were the only membership interests, except that such non-physician shall be permitted to call a meeting for the sole purpose of exercising a right by such non-physician to appoint a licensed physician (who is not a member) as an additional manager.

## ARTICLE VI –Name and Address of Managers:

The name and address of the managers are:
Title: MGR
DANIEL KAPLAN, M.D.
50 NE 26th Ave.#203
Pompano Beach, FL 33062


**IN WITNESS WHEREOF, I have signed these Articles of Organization and acknowledged them to be my act this ___ day of March 2015.**


_____
Signature of authorized representative

(In accordance with Section 605.0201(4), Florida Statutes, the execution of this affidavit constitutes an affirmation under the penalties of perjury that the facts stated herein are true.)

Daniel Kaplan, M.D.
Typed or printed name of signee

{Firm Clients/5543/5543-1/01590570.DOCX.}

# Schedule K-1 (Form 1065) 2014

☐ Final K-1   ☐ Amended K-1   651113

## Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

**Partner's Share of Income, Deductions, Credits, etc.** • See separate instructions.

### Part I — Information About the Partnership

A. Partnership's employer identification number
45-2817777

B. Partnership's name, address, city, state, and ZIP code
MEDICAL AFFILIATES PLLC
50 NE 26TH AVENUE, SUITE # 203
POMPANO BEACH, FL 33062

C. IRS Center where partnership filed return
Cincinnati, OH

D. ☐ Check if this is a publicly traded partnership (PTP)

### Part II — Information About the Partner

E. Partner's identifying number

F. Partner's name, address, city, state, and ZIP code
DANIEL KAPLAN
4020 GALT OCEAN DRIVE
FT. LAUDERDALE, FL 33308

G. ☒ General partner or LLC member-manager   ☐ Limited partner or other LLC member

H. ☒ Domestic partner   ☐ Foreign partner

I1. What type of entity is this partner? Individual

I2. If this partner is a retirement plan (IRA/SEP/Keogh/etc.), check here ☐

J. Partner's share of profit, loss, and capital (see instructions):
|          | Beginning | Ending |
|----------|-----------|--------|
| Profit   | 50 %      | 50 %   |
| Loss     | 50 %      | 50 %   |
| Capital  | 50 %      | 50 %   |

K. Partner's share of liabilities at year end:
Nonrecourse $
Qualified nonrecourse financing $
Recourse $

L. Partner's capital account analysis:
Beginning capital account        $   15,157.
Capital contributed during the year  $
Current year increase (decrease) $    3,960.
Withdrawals & distributions      $ (  3,609.)
Ending capital account           $   14,508.

☒ Tax basis   ☐ GAAP   ☐ Section 704(b) book   ☐ Other (explain)

M. Did the partner contribute property with a built-in gain or loss?
☐ Yes   ☒ No

### Part III items

| Box | Description | Amount | Box | Description | Amount |
|---|---|---|---|---|---|
| 1 | Ordinary business income (loss) | 3,148. | 15 | Credits | |
| 2 | Net rental real estate income (loss) | | | | |
| 3 | Other net rental income (loss) | | 16 | Foreign transactions | |
| 4 | Guaranteed payments | | | | |
| 5 | Interest income | | | | |
| 6a | Ordinary dividends | | | | |
| 6b | Qualified dividends | | | | |
| 7 | Royalties | | | | |
| 8 | Net short-term capital gain (loss) | | | | |
| 9a | Net long-term capital gain (loss) | | 17 | Alternative minimum tax (AMT) items | A -610. |
| 9b | Collectibles (28%) gain (loss) | | | | |
| 9c | Unrecaptured section 1250 gain | | | | |
| 10 | Net section 1231 gain (loss) | | 18 | Tax-exempt income and nondeductible expenses | C 186. |
| 11 | Other income (loss) | | | | |
| 12 | Section 179 deduction | | 19 | Distributions | A 3,609. |
| 13 | Other deductions | | 20 | Other information | |
| 14 | Self-employment earnings (loss) | A 3,148. | | | |

*See attached statement for additional information.

For IRS Use Only

BAA For Paperwork Reduction Act Notice, see Instructions for Form 1065.

EXHIBIT B





## $22,286.45

| Date | Description | Type | Amount |
|---|---|---|---|
| **Amount Included in Available Balance** | | | |
| Processing | CHECKCARD OFFICE DEPOT #19 POMPANO BEACH FL ON 03/09 | | -$14.93 |
| 03/09/2015 | Check 1638 | | -$225.00 |
| 03/09/2015 | Agent Assisted transfer to CHK 0367 Confirmation# 1692772429 | | -$10,000.00 |
| 03/09/2015 | LOWE'S #1792 1 03/09 #000059678 PURCHASE LOWE'S #1792 1851 POMPANO BEACH FL CKCD 5200 46357600266407 83 | | -$3.97 |
| 03/09/2015 | Deposit | | $400.00 |
| 03/09/2015 | Deposit | | $800.00 |
| 03/06/2015 | ADP PAYROLL FEES DES:ADP - FEES ID:2RIY4 7423045 INDN:MEDICAL AFFILIATES CO ID:9659605001 CCD | | -$52.94 |
| 03/06/2015 | *LINCOLN NATLIFE DES:PREMPAYMNT ID:ME7116895 INDN:MEDICAL AFFILIATES, P. CO ID:620RED1815 PPD | | -$349.33 |

