ORDERED in the Southern District of Florida on 03-17-15



Raymond B. Ray, Judge
United States Bankruptcy Court

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:

AARON E. BOORSTEIN

    Debtor(s)
_____/

CASE NO.: 14-30088-RBR
Chapter 7

KENNETH A. WELT, as chapter 7 trustee for
Aaron Boorstein, and DANIEL KAPLAN,

    Plaintiffs,

v.

AARON BOORSTEIN,

    Defendant.
_____/

Adv. Pro. No. 15-1175

### TEMPORARY RESTRAINING ORDER

THIS MATTER came before the court *ex parte* upon the application (the "Application") of Kenneth A. Welt, the Chapter 7 Trustee (the **"Trustee"**) for the bankruptcy estate of Aaron Boorstein and Daniel Kaplan (**"Dr. Kaplan"**), for the entry of

a temporary restraining order and to schedule a preliminary injunction hearing (the *"Application"*). The Court, having considered the verified allegations in the verified complaint (the *"Verified Complaint"*), being informed as to the agreement of Medical Affiliates, P.L. as to the relief granted herein, having considered the Application, and being duly informed in the premises, hereby enters a temporary restraining order against Aaron Boorstein (the *"Debtor"*) and:

FINDS as follows:

1.  The Trustee is the duly authorized and acting Chapter 7 Trustee of the Debtor's estate (the *"Estate"*) created pursuant to Section 541 of the Bankruptcy Code,

2.  On September 6, 2014 (the *"Petition Date"*), after the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the *"Bankruptcy Code"*).

3.  In their Verified Complaint, the plaintiffs allege:

    a)  Medical Affiliates, P.L. (the "Practice") was organized under the laws of the State of Florida on July 13, 2011, as a for-profit professional limited liability company.

    b)  The Practice was owned by its two equal members, Dr. Kaplan and the Debtor, each of which owned 50% of the Practice.

    c)  Dr. Kaplan and the Debtor were the managing members of the Practice.

    d)  The Debtor scheduled a "50% ownership" interest in the Practice (the "Debtor's Membership Interest").

    e)  The Debtor did not claim the Debtor's Membership Interest as exempt.

    f)  On March 5, 2015, Dr. Kaplan called a Special Meeting of the Members of Medical Affiliates, P.L. for March 16, 2015.

g) At the meeting, the Resolution of the Members (which is attached as Exhibit A to the Verified Complaint), passed without opposition (the "Resolution").

h) The Resolution inter alia authorized the appointment of Dr. Kaplan as the sole manager of the Practice for the time being.

i) Following the Resolution, Dr. Kaplan, on behalf of the practice, decided to terminate the employment of the Debtor, effective immediately, and the Debtor was terminated (or will be terminated) on March 16, 2015.

j) There exists an actual controversy with respect to whether the Debtor remains an owner of the Practice and has a right to manage the Practice.

k) The Debtor has continued to attempt to exercise complete dominion and control of the Practice to the detriment of the Trustee and Dr. Kaplan.

l) Since the Petition Date, the Debtor has continued to pay personal expenses out of company assets, including personal payments for personal gasoline, insurance, air conditioning repair, hotels, flowers, and purchases at Best Buy.

m) Since the Petition Date, in October 2014, the Debtor caused a distribution to be made to himself, as a member, in the amount of $6,000.00, despite that any distributions owed are owed to the Trustee, not the Debtor.

n) In fact, despite having made the $6,000 distribution (with an accompanying $6,000.00 to the other member, Dr. Kaplan), upon information and belief the Debtor caused tax returns to be filed which reflect distributions of only $3,609.00.

o) Such tax returns were created and filed without the knowledge or consent of the Trustee or Dr. Kaplan.

p) On March 11, 2015, without any knowledge or consent, Dr. Kaplan received a K-1, indicating 2014 distributions of $3,609.00, despite Dr. Kaplan (and presumably Debtor's) knowledge that such amounts are not correct. A copy of Dr. Kaplan's K-1 is attached as Exhibit B.

q) The Trustee believes it is likely that Debtor caused an equally incorrect K-1 to be generated for himself.

r) Moreover, on February 27, 2015, the Debtor caused the Practice to open a new account (the "0367 Account") at Bank of America in the Practice's name, without informing the Trustee or Dr. Kaplan.

s) While no access was provided to the Trustee or Dr. Kaplan for the 0367 Account, (perhaps) because the account was held in the same name as the Practice's existing Bank of America Account (the "Existing Account"), Dr. Kaplan discovered that he had view-only access on his iPad to the 0367 Account, despite never having been informed as to its existence.

t) On March 9, 2015, based on Dr. Kaplan's review of the 0367 account, Dr. Kaplan discovered that on March 9, 2015, $10,000.00 was transferred from the Existing Account to the 0367 Account (the "10k Transfer"). Screenshots of the Existing Account and 0367 Account evidencing the 10K Transfer are attached as Composite Exhibit C

u) Dr. Kaplan is informed and believes that the Debtor made the 10k Transfer to hide Practice Assets from the Estate and Dr. Kaplan.

(collectively the "Verified Allegations")

4. The Debtor did not claim the Debtor's Membership Interest as exempt.

5. The Verified Allegations show that immediate and irreparable injury, loss, or damage will result to the Trustee and Dr. Kaplan before the Debtor can be heard in opposition.

6. The plaintiffs have, through the Verified Allegations, shown a substantial likelihood of success on the merits in that they have shown they are likely to prevail on the determination that the Debtor's Membership Interest is property of the estate, and it and its proceeds should be turned over to the Trustee, and the Debtor should be enjoined from interfering with the administration of the Practice.

7. The Plaintiffs have demonstrated through the Verified Allegations that there is a substantial threat of irreparable harm to the plaintiffs absent the injunction in

that the plaintiffs allege that the Debtor has been secreting and depleting assets of the Practice.

8.  The allegations demonstrate that preservation of the status quo is warranted pending final hearing on the request for preliminary injunction.

9.  The threatened harm to the plaintiffs outweighs any harm the Debtor might suffer.

10. There is no reason to believe the public interest will be adversely affected.

THEREFORE, it is ORDERED that:

I.  A temporary restraining order is entered against Aaron Boorstein

II. Aaron Boorstein shall be restrained from

   a. Transferring, liquidating, converting, encumbering, pledging, loaning, selling, concealing, dissipating, disbursing, assigning, relinquishing, spending, withdrawing, granting a lien or security interest or other interest in, or otherwise disposing any funds, real or personal property, accounts, contracts, shares of stock, lists of consumer names, or other Assets, or any interest therein, wherever located, including outside the United States, that are legally or beneficially owned, controlled, or held by Medical Affiliates, P.L.

   b. Entering the offices of Medical Affiliates, P.L without the consent of the Trustee.

   c. Opening or causing to be opened any bank accounts, safe deposit boxes, commercial mail boxes, or storage facilities in the name of Medical Affiliates, P.L.

   d. Incurring charges or cash advances on any credit or bank card issued in the name, individually or jointly, of Medical Affiliates, P.L.,

   e. Except as required to comply under applicable nonbankruptcy law or regulation, utilizing any current list of patients of Medical Affiliates, P.L: (either to contact such patients or otherwise).

III. Any financial or brokerage institution, credit card processor served with a copy of this TRO that holds, controls, or maintains custody of any account or

      asset of Medical Affiliates, P.L., shall, pending further order of this Court or expiration of this Order:

      a. Hold and retain within its control and prohibit the withdrawal, removal, assignment transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any such assets, as well as all documents or other property related to such assets **BY AARON BOORSTEIN**.

      b. Shall remove any access of Aaron Boorstein to any accounts held, individually or jointly by Medical Affiliates, P.L.

IV. Law enforcement personnel including police or sheriffs may assist the Plaintiffs in implementing these provisions in order to keep the peace and maintain security.

V. Medical Affiliates, P.L. shall retain within its control and prohibit the withdrawal, removal, assignment transfer, pledge, encumbrance, disbursement, dissipation, relinquishment, conversion, sale, or other disposal of any of its assets outside the ordinary course, as well as all documents or other property related to such assets pending expiration of this order or further order of the Court.

VI. Medical Affiliates, P.L may pay expenditures as required for the ordinary course of its business operations with written notice to the Trustee during the pendency of this Order.

VII. Medical Affiliates, P.L shall not make any disbursements of profits, return of capital, or other payments to or on account of any member during the pendency of this Order.

VIII. This TRO will expire fourteen (14) days after it is signed, unless extended pursuant to applicable rules. A hearing to determine whether a preliminary injunction should issue is set for March __26__ 2015 at __2:30__ pm. at UNITED STATES BANKRUPTCY COURT, 299 E. Broward Blvd., Courtroom 308, Fort Lauderdale, FL 33301.

###

The plaintiffs shall serve a copy of this order and file a certificate of service.