UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
FORT LAUDERDALE DIVISION
www.flsb.uscourts.gov

IN RE:

AARON E. BOORSTEIN                                    CASE NO.: 14-30088-RBR
                                                     Chapter 7

      Debtor(s)
_____ /

KENNETH A. WELT, as chapter 7 trustee for           Adv. Pro. No. 15-01175-RBR
Aaron Boorstein, MEDICAL AFFILIATES, P.L
and DANIEL KAPLAN,

        Plaintiffs,

v.

AARON BOORSTEIN, JOSEPH ARAIZA,
LYNDA DANGOND, and B & A MEDICAL
ASSOCIATES, P.A.

        Defendants.
_____/

## AMENDED COMPLAINT

Daniel Kaplan (*"Dr. Kaplan"*) and Medical Affiliates, P.L (the *"Practice"* and with Dr.

Kaplan, the *"Kaplan Plaintiffs"*), by and through undersigned counsel, files this Amended

Complaint against Defendants, Aaron Boorstein (the *"Debtor"*), Joseph Araiza (*"Araiza"*),

Lynda Dangond (*"Dangond"*), And B & A Medical Associates, P.A. (*"BAPA"*) and state as

follows:

## I.      PARTIES, JURISDICTION AND VENUE

### A.  Parties

1.      Kenneth A. Welt (the ***"Trustee"***) is the duly authorized and acting Chapter 7 Trustee of the Debtor's estate (the ***"Estate"***) created pursuant to Section 541 of the Bankruptcy Code,

2.      Dr. Kaplan is now the sole owner of the Practice and a resident of Broward County Florida.

3.      The Practice is a Florida Professional Limited Liability Company, with its principal place of business in Broward County, FL.

4.      On September 6, 2014 (the ***"Petition Date"***), after the Debtor filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the ***"Bankruptcy Code"***).

5.      Debtor is *sui juris*, over the eighteen years of age, and a resident of Broward County, Florida.

6.      Dangond is *sui juris*, over the eighteen years of age, and a resident of Broward County, Florida.

7.      Araiza is *sui juris*, over the eighteen years of age, and a resident of Broward County, Florida.

8.      BAPA is a Florida Professional Corporation with its principal place of business in Broward County, FL.

**B.  Jurisdiction and Venue**

9.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1334(b).

10.      Venue is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.

**II.      GENERAL ALLEGATIONS**

11.     Medical Affiliates, P.L. (the *"Practice"*) was organized under the laws of the State of Florida on February 23, 2009, as B & K Medical Specialists LLC, a for-profit limited liability company.

12.     On July 13, 2011, after moving offices, the Practice changed its name to Medical Affiliates, P.L, and reorganized as a for-profit professional limited liability company.

13.     The Practice was owned by its two equal members, Dr. Kaplan and the Debtor, each of which owned 50% of the Practice.

14.     Dr. Kaplan and the Debtor were the managing members of the Practice.

15.     The Debtor scheduled a "50% ownership" interest in the Practice (the *"Debtor's Membership Interest"*).

16.     The Debtor did not claim the Debtor's Membership Interest as exempt.

17.     As such, the Debtor's Membership Interest became property of the bankruptcy estate, and was owned by Kenneth A. Welt, as trustee for the Debtor's bankruptcy estate;

18.     Thus, the Debtor's economic interests or distributions from the Practice were property of the bankruptcy estate, including but not limited to the capital account of the Debtor.

19.     On March 5, 2015, Dr. Kaplan called a Special Meeting of the Members of Medical Affiliates, P.L. for March 16, 2015.

20.     At the meeting, the *Resolution of the Members* (which is attached as **Exhibit A**), passed without opposition (the *"Resolution"*).

21.     The Resolution *inter alia* authorized the appointment of Dr. Kaplan as the sole manager of the Practice for the time being.

22.     Following the Resolution, Dr. Kaplan, on behalf of the practice, decided to terminate the employment of the Debtor, effective immediately, and the Debtor was terminated on March 16, 2015.

23.     On March 17, 2015, this case was commenced by the filing of a complaint [ECF No. 1].

24.     On March 17, 2015, the Court entered a Temporary Restraining Order. The Temporary Restraining Order restrained Aaron Boorstein from "except as required to comply under applicable nonbankruptcy law or regulation, utilizing any current list of patients of [the Practice] (either to contact such patients or otherwise)."

25.     On March 19, 2015, the Debtor and Araiza incorporated BAPA, a clinic offering substantially the same services as the Practice. BAPA leased space and opened its business in the same building as the Practice, two floors above.

26.     Following the Agreement of the parties, the parties agreed to, and on March 25, 2015, the Court entered, a Preliminary Injunction [ECF No. 15], which provided, *inter alia*, that "Aaron Boorstein's rights, if any, to contact patients shall be governed by applicable nonbankruptcy law."

27.     Upon information and belief, dating from before the adoption of the Resolution through the present, the Debtor has been in possession of a USB hard drive containing a backup of the Practice's patient management and electronic health record software, Amazing Charts.

28.     The Amazing Charts data was held strictly confidential by the Practice, in accordance with state and federal health-care privacy regulations and laws.

29.     Upon information and belief, BAPA, through the Debtor, utilized the Amazing Charts data to contact each existing patient of the Practice, in order to solicit the patient for BAPA.

30.     On May 30, 2015, the Debtor on behalf of BAPA, attempted to solicit the Debtor's son-in-law, Stuart Brisgel, an individual who has been seen by Dr. Kaplan, as his internist, but has never been seen by Araiza or the Debtor.

31.     Specifically, on May 30, 2015, Stuart Brisgel received a call from the Debtor, who told Stuart Brisgel "that he should return to the practice at [BAPA's location]" and that the practice "would love to have him back," or words to that effect.

32.     At 2:12 p.m. that same day, the Debtor left Stuart Brisgel a voicemail, in which the Debtor implied the Practice had moved upstairs, stating:

> Stuart, we were just talking. This is Dr. Boorstein.
> Let me leave you my number again ***-***-****.
> *We'd love to have you back*. We are in the same
> building, suite 404.

33.     Additionally, without the Practice's knowledge, BAPA enlisted a BAPA employee, Dangond, to refer patients of the Practice to BAPA, all while Dangond was still employed at the Practice.

34.     As part of this scheme, while checking the patients' vitals at the Practice, Danagard would instruct patients that they should go to the BAPA offices on the fourth floor.

35.     Such actions are in violation of Dangond's Confidentiality Agreement (the ***"Confidentiality Agreement"***), a copy of which is attached as **Exhibit B**.

36.     Effective June 12, 2015, the Trustee's share in the Practice was sold to Dr. Kaplan, pursuant to the sale order [ECF No. 73] entered in the main case.

## COUNT I
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

37.     The Kaplan Plaintiffs reassert the allegations contained in paragraphs 1 - 36 as if fully set forth herein.

38.     This is a core proceeding.

39.     There exists an actual controversy with respect to whether the Debtor remains an owner of the Practice and has a right to manage the Practice.

40.     The Debtor has continued to attempt to exercise dominion and control of the Practice and its assets to the detriment of the Kaplan Plaintiffs.

41.     A finding that the Debtor's Membership Interest is not owned by the Debtor (postpetition) is necessary to prevent injustice.

42.     A finding determining the rights of the estate and Dr. Kaplan with respect to the Debtor's Membership Interest and Medical Affiliates, P.L. is necessary to administer the estate and to prevent injustice.

**WHEREFORE,** the Kaplan Plaintiffs respectfully request the Court enter a declaratory judgment in favor of the Kaplan Plaintiffs and against the Debtor:

A.     Determining that the Debtor's Membership Interest is not owned by the Debtor (postpetition);

B.     Granting any and all further relief this Court deems fair and equitable.

## COUNT II
## DECLARATORY JUDGMENT PURSUANT TO 28 U.S.C. § 2201

43.     The Kaplan Plaintiffs reassert the allegations contained in paragraphs 1 - 36 as if fully set forth herein.

44.     This is a core proceeding.

45.     There exists an actual controversy with respect to whether the Debtor remains an owner of any prepetition medical records generated by either the Debtor or the Practice.

46.     Pursuant to §456.057(1), Fla. Stat, the owner of a patient record is the "health care practitioner who generates a medical record after making a physical or mental examination of, or administering treatment or dispensing legend drugs to, any person."

47.     The Debtor has continued to exercise dominion and control of patient records, not just for those patients seen by the Debtor prepetition, but for all patient records generated by the Practice.

48.     The patient records generated by Dr. Kaplan are clearly not owned by Dr. Kaplan.

49.     Even if the patient records generated by the Debtor prepetition were owned by Dr. Boorstein, any legal title to such records became owned by the estate upon the filing of the petition.

50.     BAPA's continued solicitation of Practice patients has injured the Practice, and subject it to potential liability, because pursuant to 456.057(7)(b), Fla. Stat., "absent a specific written release or authorization permitting utilization of patient information for solicitation or marketing . . . services, any use of that information for those purposes is prohibited."

51.     A finding that such records are not owned by the Debtor (postpetition) is necessary to prevent injustice.

52.     A finding determining the rights of the Debtor and BAPA to Practice patient records is necessary to administer the estate and to prevent injustice.

**WHEREFORE,** the Kaplan Plaintiffs respectfully request the Court enter a declaratory judgment in favor of the Kaplan Plaintiffs and against the Debtor:

A.    Determining that no patient records generated prepetition are owned by the Debtor (postpetition);

B.    Granting any and all further relief this Court deems fair and equitable.

## COUNT III
## TORTIOUS INTERFERENCE WITH BUSINESS RELATIONSHIPS

53.    The Practice reasserts the allegations contained in paragraphs 1 - 36 as if fully set forth herein.

54.    This is a non-core, related-to proceeding.

55.    The Practice had an ongoing business relationship with the Practice's patients whereby patients would visit the clinic on a regular, fixed-interval basis.

56.    The Debtor, and BAPA (through the Debtor) had knowledge of these relationships.

57.    BAPA and the Debtor intentionally and unjustifiably interfered with these relationships by (1) unlawfully utilizing patient records for solicitation in violation of 456.057(7)(b), Fla. Stat., while misrepresenting or omitting that BAPA was not a continuation of the Practice, and (2) entering into a secret arrangement with a Practice employee whereby the Practice employee would refer patients to a competitor, BAPA.

58.    The Practice has lost many ongoing patient relationships due to such conduct, which has damaged the Practice.

**WHEREFORE,** the Practice respectfully requests the Court enter a declaratory judgment in favor of the Practice and against the Debtor and BAPA for its damages, and for any and all further relief this Court deems fair and equitable.

## COUNT IV
## CONSPIRACY TO
## TORTIOUSLY INTERFERE WITH BUSINESS RELATIONSHIPS

59.     The Practice reasserts the allegations contained in paragraphs 1 - 36 as if fully set forth herein.

60.     This is a non-core, related-to proceeding.

61.     The Practice had an ongoing business relationship with the Practice's patients whereby patients would visit the clinic on a regular, fixed-interval basis.

62.     The Debtor, and BAPA (through the Debtor) had knowledge of these relationships.

63.     BAPA and the Debtor intentionally and unjustifiably interfered with these relationships by (1) unlawfully utilizing patient records for solicitation in violations of 456.057(7)(b), Fla. Stat. while misrepresenting or omitting that BAPA was not a continuation of the Practice, and (2) entering into a secret arrangement with a Practice employee whereby the Practice employee would refer patients to a competitor, BAPA.

64.     The Practice has lost many ongoing patient relationships due to such conduct, which has damaged the Practice.

65.     There was an explicit agreement among BAPA, Araiza, and Dangond to take such wrongful actions.

66.     Dangond benefited from the conspiracy by receiving payments from BAPA for such actions.

67.     Dangond acted in furtherance of the conspiracy by referring patients to BAPA while employed by the Practice.

68.     Upon information and belief, Araiza acted in furtherance of the conspiracy by seeing patients referred by Dangond, which ultimately benefited him as a shareholder of BAPA.

**WHEREFORE,** the Practice respectfully requests the Court enter judgment in favor of the Practice and against Dangond and Araiza for its damages, and for any and all further relief this Court deems fair and equitable.

## COUNT V
## BREACH OF CONFIDENTIALITY AGREEMENT

69.     The Practice reasserts the allegations contained in paragraphs 1 - 36 as if fully set forth herein.

70.     This is a non-core, related-to proceeding.

71.     The Confidentiality Agreement is a valid, enforceable agreement.

72.     Dangond breached the Confidentiality Agreement by misusing patient information for the benefit of BAPA.

73.     Accordingly, the Practice has been damaged.

**WHEREFORE,** the Practice respectfully requests the Court enter judgment in favor of the Practice and against Dangond for its damages, and for any and all further relief this Court deems fair and equitable.

## COUNT VI
## MISAPPROPRIATION OF TRADE SECRET

74.     The Practice reasserts the allegations contained in paragraphs 1 - 36 as if fully set forth herein.

75.     This is a non-core, related-to proceeding.

76.     The Practice had an ongoing business relationship with the Practice's patients whereby patients would visit the clinic on a regular, fixed-interval basis.

77.     The Debtor, and BAPA (through the Debtor) had knowledge of these relationships.

78.     The Debtor disclosed to BAPA, and BAPA used patient information, including patient contact information, medical history, and data from Amazing Charts.

79.     The Practice derived independent economic value from such information not being readily ascertainable by proper means by other persons, and engaged in reasonable efforts to protect such information from disclosure.

80.     Given the sensitivity of patient information, both the Debtor and BAPA knew that the Debtor's knowledge of such information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

81.     BAPA and the Debtor unlawfully utilized patient records for solicitation in while misrepresenting or omitting that BAPA was not a continuation of the Practice.

82.     The Practice has lost many ongoing patient relationships due to such conduct, which has damaged the Practice.

**WHEREFORE,** the Kaplan Plaintiffs respectfully request the Court enter a judgment in favor of the Practice and against the Debtor and BAPA for its damages, and for  any and all further relief this Court deems fair and equitable.

## COUNT VI
## CONSPIRACY TO MISAPPROPRIATE TRADE SECRET

83.     The Practice reasserts the allegations contained in paragraphs 1 - 36 as if fully set forth herein.

84.     This is a non-core, related-to proceeding.

85.     The Practice had an ongoing business relationship with the Practice's patients whereby patients would visit the clinic on a regular, fixed-interval basis.

86.     The Debtor, and BAPA (through the Debtor) had knowledge of these relationships.

87.     The Debtor disclosed to BAPA, and BAPA used patient information, including patient contact information, medical history, and data from Amazing Charts.

88.     The Practice derived independent economic value from such information not being readily ascertainable by proper means by other persons, and engaged in reasonable efforts to protect such information from disclosure.

89.     Given the sensitivity of patient information, both the Debtor and BAPA knew that the Debtor's knowledge of such information was acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use.

90.     BAPA and the Debtor unlawfully utilized patient records for solicitation in while misrepresenting or omitting that BAPA was not a continuation of the Practice.

91.     The Practice has lost many ongoing patient relationships due to such conduct, which has damaged the Practice.

92.     There was an explicit agreement among BAPA, the Debtor and Araiza to take such wrongful actions.

93.     Upon information and belief, Araiza acted in furtherance of the conspiracy by incorporating BAPA, which ultimately benefited him as a shareholder of BAPA as BAPA generated revenue through patients generated by the misappropriation of trade secrets.

**WHEREFORE,** the Practice respectfully requests the Court enter judgment in favor of the Practice and against Araiza for its damages, and for any and all further relief this Court deems fair and equitable.

## COUNT VII
## INJUNCTION AND OTHER EQUITABLE RELIEF

94.     The Kaplan Plaintiffs reassert the allegations contained in paragraphs 1 - 36 as if fully set forth herein.

95.     This is a core proceeding.

96.     Since the Petition Date, the Debtor has continued to pay personal expenses out of company assets, including, without limitation, personal payments for personal gasoline, insurance, air conditioning repair, hotels, flowers, and purchases at Best Buy.

97.     Since the Petition Date, in October 2014, the Debtor caused a distribution to be made to himself, as a member, in the amount of $6,000.00, despite that any distributions owed are owed to the Trustee, not the Debtor.

98.     In fact, despite having made the $6,000 distribution (with an accompanying $6,000.00 to the other member, Dr. Kaplan), upon information and belief the Debtor caused tax returns to be filed which reflect distributions of only $3,609.00.

99.     Such tax returns were created and filed without the knowledge or consent of the Trustee or Dr. Kaplan.

100.     On March 11, 2015, without any knowledge or consent, Dr. Kaplan received a K-1, indicating 2014 distributions of $3,609.00, despite Dr. Kaplan (and presumably Debtor's) knowledge that such amounts are not correct. A copy of Dr. Kaplan's K-1 is attached as **Exhibit C**.

101.     Dr. Kaplan and Trustee believe it is likely that Debtor caused an equally incorrect K-1 to be generated for the Trustee.

102.    Moreover, on February 27, 2015, the Debtor caused the Practice to open a new account (the *"0367 Account"*) at Bank of America in the Practice's name, without informing the Trustee or Dr. Kaplan.

103.    While no access was provided to the Trustee or Dr. Kaplan for the 0367 Account, (perhaps) because the account was held in the same name as the Practice's existing Bank of America Account (the *"Existing Account"*), Dr. Kaplan discovered that he had view-only access on his iPad to the 0367 Account, despite never having been informed as to its existence.

104.    On March 9, 2015, based on Dr. Kaplan's review of the  0367 account, Dr. Kaplan discovered that on March 9, 2015, $10,000.00 was transferred from the Existing Account to the 0367 Account (the *"10k Transfer"*). Screenshots of the Existing Account and 0367 Account evidencing the 10K Transfer are attached as **Composite Exhibit D.**

105.    Upon information and belief, the Debtor made the 10k Transfer to hide Practice Assets from the Estate and Dr. Kaplan.

106.    The Debtor, while initially cooperative, has prevented the Trustee access to the books and records of Medical Affiliates, P.L.

107.    An injunction is necessary in order to prevent the Debtor from continuing to dissipate, secret, conceal or transfer the assets of the Practice to the detriment of the Debtor's creditors, the Practice, Dr. Kaplan, and this bankruptcy estate.

108.    Unless the Court issues an injunction or some other form of equitable relief to stop Debtor from dissipating or secreting the assets of the Practice, the Practice will suffer irreparable harm and will have no adequate remedy at law to recover the assets of Practice for the benefit of the Estate.

109.    The threatened injury to the Practice outweighs any threatened harm an injunction may cause Debtor, as the Debtor has no right to continue participating in the practice and will, therefore, suffer no harm.

110.    An injunction would serve the public interest because it will dissuade Debtor from fraudulently transferring and secreting the Practice's assets to avoid payment of the Debtor's creditors, while at the same time enjoying the benefits of the Practice's assets.

**WHEREFORE**, the Kaplan Plaintiffs respectfully request that an injunction, or some other form of equitable relief, be granted to stop Debtor from concealing, dissipating or secreting any assets of the Practice, or the proceeds thereof, to remove any access that the Debtor may have to the Practice or its assets, to enforce the automatic stay  and damages for violation of the automatic stay and to provide any further relief that this Court deems just, fair and equitable.

## COUNT VIII
## INJUNCTION AND OTHER EQUITABLE RELIEF

111.    The Kaplan Plaintiffs reassert the allegations contained in paragraphs 1 – 36, 46-50, 55-58 and 76-82 as if fully set forth herein.

112.    This is a non-core proceeding.

113.    An injunction is necessary in order to prevent the Debtor and BAPA from continuing to misappropriate trade secrets, violate patient confidentiality laws, and interfere with the Practice's business relationships.

114.    Unless the Court issues an injunction or some other form of equitable relief to stop Debtor and BAPA continuing to misappropriate trade secrets, violate patient confidentiality laws, and interfere with the Practice's business relationships, the Practice will suffer irreparable harm and will have no adequate remedy at law to redress such injury.

115.    The threatened injury to the Practice outweighs any threatened harm an injunction may cause Debtor and BAPA, as the Debtor and BAPA has no right to continue engaging in such unlawful actions and will, therefore, suffer no harm.

116.    An injunction would serve the public interest because it will dissuade Debtor and BAPA from misappropriating the Practice's assets and its patients' information.

**WHEREFORE**, the Kaplan Plaintiffs respectfully request that an injunction, or some other form of equitable relief, be granted to stop Debtor and BAPA from continuing to utilize Practice patient information, from contacting or soliciting such patients, or from utilizing any assets of the Practice.

s/ Lawrence E. Pecan, III
Lawrence E. Pecan, III, Esquire
Florida Bar No. 99086
lpecan@melandrussin.com
MELAND RUSSIN & BUDWICK, P.A.
3200 Southeast Financial Center
200 South Biscayne Boulevard
Miami, Florida  33131
Telephone: (305) 358-6363
Telecopy: (305) 358-1221
*Attorneys for the Trustee*

<u>**CERTIFICATE OF SERVICE**</u>

     I HEREBY CERTIFY that a true and correct copy of the foregoing was served by CM/ECF on June 29, 2015 to

Kevin C Gleason, Esq on behalf of Defendant Aaron E Boorstein

kgpaecmf@aol.com


Lawrence E Pecan on behalf of Plaintiff Daniel L. Kaplan, MD

lpecan@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com


Lawrence E Pecan on behalf of Plaintiff Kenneth A Welt

lpecan@melandrussin.com, ltannenbaum@melandrussin.com;mrbnefs@yahoo.com


Craig A. Pugatch, Esq on behalf of Plaintiff Kenneth A Welt

capugatch.ecf@rprslaw.com

<u>s/ Lawrence E. Pecan, III</u>
Lawrence E. Pecan, III

### Resolution of the Members of
### Medical Affiliates, P.L.

WHEREAS, Medical Affiliates, P.L. (the "Company") was organized under the laws of the State of Florida on July 13, 2011;

WHEREAS, the Company was owned by its two equal members, Daniel Kaplan and Aaron Boorstein, each of which owned 50% of the Company;

WHEREAS, Aaron Boorstein and Daniel Kaplan were the managing members of the Company;

WHEREAS, on September 6, 2014, Aaron Boorstein filed a voluntary bankruptcy petition under chapter 7 of title 11 of the United States Code;

WHEREAS, Kenneth A. Welt was appointed the trustee of Aaron Boorstein's bankruptcy estate;

WHEREAS, the Articles of Organization signed July 12, 2011 provide that "the members of this P.L. shall be physicians licensed under Chapter 458 F.S. or 459 F.S.";

WHEREAS, Kenneth A. Welt is not a physician;

WHEREAS, in spite of such limitation, the membership interest owned by Aaron Boorstein became property of the bankruptcy estate, and is owned by Kenneth A. Welt, as trustee for Aaron Boorstein's bankruptcy estate;

WHEREAS, any economic interest or distribution in the Company is property of the bankruptcy estate, including the capital account of Aaaron Boorstein.

WHEREAS, Kenneth A. Welt cannot vote, as he is not a physician;

WHEREAS, Aaron Boorstein, no longer possesses an economic interest as a member, including an interest in his capital account.

WHEREAS, it is in the best interest of the Company that it continue to operate.

{Firm Clients/5543/5543-1/01590570.DOCX.}



EXHIBIT

A

NOW THEREFORE, be it resolved that:

1.  The Articles of Organization shall be amended, in the form attached as Exhibit 1 to

    a.  Update the applicable statutory references;

    b.  Remove Aaron Boorstein as a manager;

    c.  Provide Daniel Kaplan is presently the sole manager;

    d.  Permit Kenneth A. Welt to appoint a physician as a second manager, in his discretion;

2.  Aaron Boorstein shall shall not manage the Company, and shall have no right to bind the Company.

3.  The Company shall open new bank accounts and transfer all funds held in its existing accounts to the new accounts, for which Daniel Kaplan will be the sole signature authority.

4.  The Company shall change all its locks and provide copies of keys to Kenneth A. Welt.

5.  So long as Kenneth A. Welt as Trustee in Bankruptcy maintains an interest in the Company:

    a.  All payments outside the ordinary course must be presented to Kenneth A. Welt one week prior to such payment, to which Kenneth A. Welt may object by emergency motion to the United States Bankruptcy Court for the Southern District of Florida;

    b.  Kenneth A Welt shall have access to all financial records and information of the Company, subject to restrictions of HIPAA and applicable confidentiality.

    c.   Kenneth A Welt shall have access to all records of the Company subject to an

        appropriate standard business associate agreement, subject to restrictions of

        HIPAA and applicable confidentiality.

    d.   The Operating Agreement cannot be amended.

Dated this 16th day of March 2015.

_____

**Dr. Daniel**

Member and Sole Manager

## AMENDED ARTICLES OF ORGANIZATION
## OF MEDICAL AFFILIATES, P.L.

The undersigned, being authorized to execute and file these Articles of Organization, hereby certifies that:

### ARTICLE I –Name:
The name of the limited liability company (hereinafter referred to as the "Company") is "Medical Affiliates, P.L."

### ARTICLE II –Address:
The mailing address and street address of the principal office of the Company is:
50 NE 26th Ave.
#203
Pompano Beach, FL 33062

### ARTICLE III –Registered Agent, Registered Office and
### Registered Agent's Signature:

The name and Florida Street address of the Company's registered agent is: Daniel Kaplan, M.D., at 4020 Galt Ocean Dr. #1408, Fort Lauderdale, FL 33308.

*Having been named as registered agent and to accept service of process for the above stated limited liability company at the place designated in this certificate, I hereby accept the appointment as registered agent and agree to act in this capacity. I further agree to comply with the provision of all statutes relating to the proper and complete performance of my duties and I am familiar with and accept the obligations of my position as registered agent as provided for in Chapter 605 F.S.*


_____
Daniel Kaplan, M.D.

### ARTICLE IV –Limitation on Agency Authority of Members:
Pursuant to section 605.04074 of the Florida Limited Liability Company Act, no member of the Company shall be an agent of the Company solely by virtue of being a member.

### ARTICLE V –Limitation on Ownership and Purpose:
This Company is organized for the purpose of rendering medical and related services and transacting any and all lawful business permitted for such a professional service corporation under Chapters 608 and 621 of the F.S. and pursuant to Chapter 621 F.S., the members of this P.L. shall be physicians licensed under Chapter 458 F.S. or 459 F.S.

Notwithstanding any contrary provision of these Articles of Organization or any applicable Operating Agreement, in the event that, in spite of this Article V, a membership interest comes to be owned by a non-physician, by operation of title 11, United States Code, then for the purposes of voting any interest, including for determination of a quorum, unanimous written consent, or similar provision, the interest owned by such non-physician shall be ignored, and the remaining membership interests shall have such rights as if they were the only membership interests, except that such non-physician shall be permitted to call a meeting for the sole purpose of exercising a right by such non-physician to appoint a licensed physician (who is not a member) as an additional manager.

**ARTICLE VI –Name and Address of Managers:**

The name and address of the managers are:
Title: MGR
DANIEL KAPLAN, M.D.
50 NE 26th Ave.#203
Pompano Beach, FL 33062

**IN WITNESS WHEREOF, I have signed these Articles of Organization and acknowledged them to be my act this ___ day of March 2015.**

_____
Signature of authorized representative

(In accordance with Section 605.0201(4), Florida Statutes, the execution of this affidavit constitutes an affirmation under the penalties of perjury that the facts stated herein are true.)

Daniel Kaplan, M.D.
Typed or printed name of signee

## CONFIDENTIALITY AGREEMENT

The undersigned individual is either a W-2 employee ("Employee") or a 1099 contractor ("Contractor") for the Company.

_____ (the "Employee or Contractor") agrees that while Employed by or engaged by B & K Medical Specialists, LLC (the "Company"), and afterwards, as follows:

(1)     While Employee or Contractor is employed by the Company or engaged by the Company and afterwards, the Employee or Contractor covenants, agrees and promises that he or she hasn't and will not disclose to any person, firm, corporation, partnership, or entity of any kind or otherwise use or exploit any of the proprietary or confidential business information of the Company, including but not limited to, trade secrets, policy and procedure manuals, confidential client or patient information, methods, processes, techniques, fees charged or received, computer software or programming, budgets or other financial information, written agreements with any third party, any financial information, any patient care or other patient information, except to the extent required by her performance of assigned duties for the Company or as required by law.

(2)     The Employee or Contractor agrees not to make, and has not made any copies of any of these documents or any Company documents whatsoever for personal use. Further, all documents described herein (if in Employee or Contractor's possession) shall never be removed from the Company's premises, and if any have been removed with Company authorization, then all such Company property must be returned to the Company upon termination of employment or engagement from the Company.

IN WITNESS WHEREOF, the Employee or Contractor or Contractor has subscribed her signature and the Company has caused this Agreement to be executed on October 5 , 2010.

Witness

(Employee or Contractor or Contractor)

Print Name: _____

B & K Medical Specialists, LLC

Daniel Kaplan, M.D., Manager

# EXHIBIT B

Schedule K-1 (Form 1065) 2014 — Partner's Share of Income, Deductions, Credits, etc.

Part I — Information About the Partnership

A  Partnership's employer identification number
45-2817777

B  Partnership's name, address, city, state, and ZIP code
MEDICAL AFFILIATES PLLC
50 NE 26TH AVENUE, SUITE # 203
POMPANO BEACH, FL 33062
Cincinnati, OH

Part II — Information About the Partner

F  Partner's name, address, city, state, and ZIP code
DANIEL KAPLAN
4020 GALT OCEAN DRIVE
FT. LAUDERDALE, FL 33308

I1  What type of entity is this partner?  Individual

Part III — Partner's Share of Current Year Income, Deductions, Credits, and Other Items

1  Ordinary business income (loss)  3,148
14  Self-employment earnings (loss)  A  3,149
17  Alternative minimum tax (AMT) items  A  -610
18  Tax-exempt income and nondeductible expenses  C  189
19  Distributions  A  3,609

L  Partner's capital account analysis:
Beginning capital account  $ 15,157
Capital contributed during the year  $
Current year increase (decrease)  $ 2,960
Withdrawals & distributions  $ ( 3,609 )
Ending capital account  $ 14,508

*See attached statement for additional information.

BAA  For Paperwork Reduction Act Notice, see Instructions for Form 1065

EXHIBIT
C





EXHIBIT

D

# $22,286.45

Search tra

| Date | Description | Type | Amount |
|------|-------------|------|--------|
| | **Amount Included in Available Balance** | | |
| Processing | CHECKCARD OFFICE DEPOT #19 POMPANO BEACH FL ON 03/09 | | -$14.93 |
| 03/09/2015 | Check 1638 | | -$225.00 |
| 03/09/2015 | Agent Assisted transfer to CHK 0367 Confirmation# 1692772429 | | -$10,000.00 |
| 03/09/2015 | LOWE'S #1792 1 03/09 #000059678 PURCHASE LOWE'S #1792 1851 POMPANO BEACH FL CKCD 5200 4635760026640783 | | -$3.97 |
| 03/09/2015 | Deposit | | $400.00 |
| 03/09/2015 | Deposit | | $800.00 |
| 03/06/2015 | ADP PAYROLL FEES DES:ADP - FEES ID:2RIY4 7423045 INDN:MEDICAL AFFILIATES CO ID:9659605001 CCD | | -$52.94 |
| 03/06/2015 | *LINCOLN NATLIFE DES:PREMPAYMNT ID:ME7116895 INDN:MEDICAL AFFILIATES, P. CO ID:620RED1815 PPD | | -$349.33 |

● ○

Privacy & Security            Important Legal Information

